# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| David Christian, PRO SE | ) | Case No : |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| Vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Warwick Realty LLC ET AL | ) | |

Norman Zolkos

Jacquelyn Zolkos

Sara Carpenter

Rebecca Carpenter

Brenda L. Ricci

Ernie Ricci

BidPro LLC

TriStar Properties LLC

Defendants

_____

David Christian

876 Ten Rod Rd

North Kingstown RI 02852

401-269-9983

David Christian alleges and avers the following:

## A. Jurisdiction and venue

This action is brought pursuant to 28 U.S.C. 1332 (Diversity) and appropriate relief is sought. Also 42 U.S.C. 4852d and appropriate relief is sought. The court has supplemental

[PLEADING TITLE] - 1

jurisdiction pursuant to 28 U.S.C. 1367 to hear plaintiffs state law claims because those claims are related to plaintiff's federal claims and are inextricably entwined and arise out of a common nucleus of related facts. Plaintiffs state law claims are related to plaintiff's federal law claims such as those claims form part of the same case of controversy under article III of the United States Constitution. Venue is proper in that the claims alleged here arose due to the plaintiff's residence within the district of Rhode Island.

## B. PARTIES

David Christian is a resident of North Kingstown Rhode Island harmed by the defendants and is acting PRO SE. Plaintiff David Christian, is a citizen who lives in North Kingstown RI.

Sara Carpenter and Rebecca Carpenter, are residence of Boston Massachusetts.

Norman Zolkos and Jacquelyn Zolkos are residence of Warwick RI

Brenda Ricci and Ernie Ricci are residence of North Kingstown RI

Warwick Realty LLC ET AL is a company located in Warwick RI

Bidpro LLC and TriStar Properties LLC are companies owned, operated and/ or managed by Ernie Ricci and /or Brenda Ricci and is difficult for plaintiff to ascertain do to the constant shuffle of property and businesses between these companies and individuals. And subject 876 Ten Rod Rd North Kingstown RI 02852 property may be bought, sold, purchased, transferred or other between these companies.

## C. FACTS

[PLEADING TITLE] - 2

1.      In august 2011 plaintiff was looking for a home to rent in the North Kingstown RI area. Plaintiff came across a dilapidated home in North Kingstown RI with a sign on the lawn the read "FOR SALE".

2.      Plaintiff called the phone number listed on the sign and left a message stating his interest in the home for sale.

3.      A woman later called back and identified herself as a realtor listing the home. After sever days of phone calls back and forth with the realtor she gave plaintiffs phone number to a man named "Norman".

4.      After speaking with "Norman" for some time on the phone, Plaintiff expressed his interest in the dilapidated home. Norman stated the home was listed on MLS for sale at $128,000. It was livable with a little work. During the phone conversation with Norman, plaintiff stated that he was a contractor and understands the home is in severe disrepair, but Plaintiff was still interested in the home. Plaintiff further explained that plaintiff was interested in fixing the house up and reselling it after the repairs to make an extremely large profit. Plaintiff explained he would live in the home with his family and fix it up over time, once the house was fixed up he would resell the home for profit. Norman restated the price at $128,000, and plaintiff stated that was a fair price, because plaintiff's sole intention was to fix it up and sell it for a profit. Norman then stated to plaintiff that "this is a great house to flip" and the area it is in would bring a substantial profit, well in excess of the current purchase price.

5      Plaintiff asked Norman if he could look inside the property, and Norman agreed and said "yes go check it out".

[PLEADING TITLE] - 3

6.      Plaintiff took it upon himself to go look at the property. Plaintiff learned that the property was vacant, completely gutted, with nothing but the shell of the house intact. Plaintiff was taken aback by the condition of the home after Norman stated it was livable with a little work, but after some research on the home realized the size of the house could return a substantial profit based on the area and size of the home.

7.      Plaintiff agreed on a price of $128.000 and signed a purchase agreement with Norman. Norman said he would provide the mortgage on the home and plaintiff would pay him directly, that if plaintiff paid $2,500 deposit he would sign a quit claim deed to the property and Plaintiff could begin work as soon as I filed the deed with the city of North Kingstown.

8.      Plaintiff asked Norman how the purchase would work if he was holding the mortgage himself. Norman stated it was like a Rent to Own Home, he would hold the note and just pay him directly that "Warwick Realty LLC" would be the "lender" he further explained that after receiving the $2,500 down payment there would be a $600.00 per month mortgage payment. We signed a mortgage agreement, Plaintiff paid $2,500 cash to Norman and sometime later Norman provided Plaintiff with a quit claim deed signed by Jacqueline Zolkos Sole Member of Warwick Realty LLC.

9.      In September of 2011 plaintiff obtained all permits from town building officials necessary to quickly make the house livable for his family which included 2 young children.

10. In September 2011 Plaintiff worked day and night to install electrical service to the home, wire part of the home, install plumbing for part of the house, and install insulation and drywall to make the house habitable.

[PLEADING TITLE] - 4

10.     In October 2011 plaintiff moved into the home after enough work was completed to make the home habitable for him and his family.

11.     After moving into the home plaintiff spoke with Norman Zolkos and he insisted that instead of paying the $600 per month, he stated "put the money into the house" "I can wait for you to refinance to get my money". Plaintiff was not aware that Norman wanted plaintiff to refinance the home after plaintiff has completed 10's of thousands of dollars in work on the home.

12.     At a later date sometime in January 2012 after discussions with Norman Zolkos we came to a verbal agreement that it would be best if we refinance the property in question after the work was substantially completed, substantially as we discussed was completion of enough work to get a conventional loan from a bank to pay off "Warwick Realty"  Plaintiffs "lender".

13.     In early 2012, Norman called plaintiff and stated that the other owner of the house wants the work done quick so he can get his money. Plaintiff was unaware of any "other" owner.

14.     Plaintiff met with Norman in early February 2012 and learned that Norman "owed" lots of investors' money that he was borrowing from private lenders using 876 Ten rod Rd, Plaintiffs home, for some sort of "collateral against these loans. Plaintiff further learned that Victor Licorish was coming from Boston to see the progress on the work I have done because he wants the house refinanced so he can get his money.

15.     Plaintiff met with Victor Licorish, Norman Zolkos, and John doe #1 in mid-2012. Plaintiff was informed that Victor had a lot of money tied up in "this" property referring to plaintiffs home at 876 Ten Rod Rd. Plaintiff asked how that was possible he knew of nothing of

[PLEADING TITLE] - 5

Victor until several months later after already purchasing the property. Norman stated he borrowed money from Victor and the house was part of the "deal". Plaintiff was furious and stopped all ongoing work on the home, not sure of what was going to happen with the home.

16.    Plaintiff learned at a later date that Norman Zolkos, Jacqueline Zolkos, and Warwick Realty LLC were borrowing money from several private lenders using the home as collateral.

17.    In late 2013 Plaintiff received a foreclosure notice from a private lenders attorney Sara Carpenter and Rebecca Carpenter "lender" that was foreclosing on the home located at 876 ten rod rd. due to Norman Zolkos, Warwick Realty LLC and Jacquelyn Zolkos failure to pay monies owed.

18.    Plaintiff called Norman Zolkos and Warwick Realty in late 2013 several times with no response.  Plaintiff then contacted the attorney on the letter of foreclosure and was informed that Norman and Warwick realty owed money and was in default and there was a lien on the property.

19. Plaintiff called Warwick Realty and Norman Zolkos several more times with no response. Plaintiff then spoke with the attorney of record for the foreclosure and found out that Norman Zolkos owes money to lots of people and gets his properties auctioned off all the time. That he also owes over $200,000 in back taxes, and the nightmare has begun.

20.    A week later plaintiff found that the auction was cancelled and that Norman had become current so the foreclosure was stopped.

21.    A few weeks later plaintiff was called by an individual later identified as Ernie Ricci telling plaintiff that he just bought his house at auction. Plaintiff was stunned and asked him

[PLEADING TITLE] - 6

what he meant. Ernie said he just bought plaintiffs house at an auction and wanted to know what

it looked like inside. Plaintiff told Ernie the Plaintiff knew nothing about an auction, and Ernie

stated "that's not my problem, that's your problem with them".

22.     After several phone calls between plaintiff and Ernie Ricci, they agreed to meet at the

property. Ernie stated at the meeting inside the house that he would still sell the property to

plaintiff but now at a price of $179.000. Plaintiff and Ernie talked for a few minutes and agreed

that plaintiff would still be able to buy the property and that we could sign a lease with an option

to purchase in order to keep the home. Plaintiff and Ernie discussed terms of the lease with an

option, which would include but not be limited to 1. Purchase price of 179,000 dollars 2. $1,000

per month rent with $300 to be returned at closing when we eventually get financing. 3. That if

any loans were taken on the property they would be repaid before our purchase of the home with

a conventional loan. 4. That any work I complete on the house material and labor will be

reimbursed to me if plaintiff decide not to get the house or could not get financing, based on the

fair market value of my work completed. Plaintiff also stated he needed the lease with the

purchase option as quick as possible to have his attorney review it.

23.     In early February of 2014 Plaintiff received a phone call from Ernie Ricci stating that he

owns the house now and he will get the lease with an option to purchase ready, expect to pay him

$500 on the 15th of February and $1,000 on the first of march. Feb 15th came and went with no

word about plaintiffs lease with option being ready to sign.

24.     In early February Ernie asked Plaintiff to put windows in the home on the upper floors

that are vacant and where windows do not exist. Plaintiff asked why, and Ernie stated he was

[PLEADING TITLE] - 7

having the home looked at by an investor to get money from him. Ernie told plaintiff The

investor was going to do a drive by and wanted the property to look good so he could get money

to fix up his other properties.

25.     Plaintiff then purchased some windows and installed them. Plaintiff also relied on Ernie's

word about the lease option and plaintiff's ability to keep the home. Plaintiff resumed working

on the home, installing a new kitchen and electrical work installing new doors, and misc. work

on the home.


26.     Plaintiff then received a text from Ernie Ricci in early march with the lease option.

Plaintiff reviewed the document and found it to be absurd that the document covered nothing of

what we discussed and that it didn't protect plaintiffs interests. Plaintiff text back to Ernie that he

was not signing a lease that is 180 degrees from what we agreed on.

27.     Plaintiff sent multiple text back and forth with Ernie, Plaintiff stated he was not paying

anything unless the lease/option was fixed, or Plaintiff would give $1000 rent to him if it was

refundable if we did not reach an agreement on the lease/option, Ernie stated among other things,

"you don't make the rules I do" "pay $1000, sign the lease or I'll evict you" Brenda Ricci has

since acted as a co-conspirator in all allegations by creating a lease option, enforing what Ernie

Ricci discussed with plaintiff and then Brenda Ricci signing said lease creates a Co-conspirators

act in all allegation by Plaintiff.( See Exibit A) To this day no one has provided a lease/contract

all defendants have done is send a picture of the signed page to plaintiffs email.

28.     As of March 9, 2014 Plaintiff believes he is the owner of subject property due to an illegal foreclosure and sale and has no paperwork from anyone as a tenant or anything else.

29. Defendants Sara Carpenter and Rebecca Carpenter through their attorney sent notice that the mediation required under title 34 was not required because the payments were over 120 days in rears. Plaintiff received notice that first Auction was cancelled in NOV 2012 because Norman Zolkos became current, Plaintiff asserts there is a lot of misrepresentations as to the claims of such an affidavit and that plaintiff believes all defendants are subject to follow laws and guidelines. (See exhibits A,B,C,D,E)

## Count 1 Fraud

Plaintiff re alleges 1-28 of complaint here; Plaintiff asserts that defendants made numerous false representations of material fact and defendants made these representations with the knowledge or reckless disregard of their falsity. Over the time period of approximately 26 months defendants have negligently or intentionally misled the plaintiff and made representations inducing the plaintiff to rely to plaintiff's detriment, which he did.

## Count 2 Negligent Misrepresentation

Plaintiff re alleges 1-28 of facts herein.. Plaintiff contends that Norman Zolkos and Jacquelyn Zolkos and Warwick Realty are real-estate brokers who work for Warwick Realty. In addition the defendants act as an agent in the "loan" that the note for the property is under. Defendants have misrepresented loans, home condition, and contract requirements over the time of this purchase of the home by the plaintiff

## Count 3 Interference with economic advantage

[PLEADING TITLE] - 9

1    Plaintiff re asserts 1-28 of facts herein. Defendants were aware from the first contact that

2    plaintiff was and is a contractor for 20 plus years. Defendants were also aware that plaintiff's

3    purpose in buying the home from the defendants was to improve the home and make it ready for

4    resale. Defendants were aware and had personal knowledge that the resale of the home would be

5

6    significantly higher than the purchase price once it was completed and all repairs were made.

7    Defendant were also aware and with personal knowledge that even with the plaintiff living in the

8    home with minor repairs would increase the value of the (formally vacant for 5 year) home

9    higher than the purchase price therefor creating an economic advantage in the equity of the

10   home. The defendants have interfered with this economic advantage through fraud and

11   intimidation and threats of losing the home.

12

13                          **Count 4 Civil Conspiracy**

14   Plaintiff re alleges facts 1-28 herein and states that defendants have conspired as agents, owners,

15   operators to mislead, defraud, and financially gain from conspiracy of selling a home to plaintiff.

16

17                              **Punitive Damages**

18   Plaintiff re alleges facts 1-28 herein. Defendants maliciously intended to defraud the plaintiff and

19   in their deliberate conduct caused the plaintiff undue harm. Plaintiff further asserts that the

20   defendant's failure to disclose information in contract, liens, condition of home, was willful and

21   malicious.

22

23                          **Count 5 Breach of contract**

24

25

     [PLEADING TITLE] - 10

Plaintiff reasserts 1-28- of facts herein. Defendants through negligent disregard, or intentional failure did breach the contract by not providing information on the home, habitability, loans, and did breach the verbal agreements on conditions of sale.

### Count 6 Violation of real-estate disclosure laws

Plaintiff re alleges facts 1-28- herein. Plaintiff asserts that the defendants violated laws insofar as defendants did not inform plaintiff of lead paint in the home, defendants did not inform him of liens on the home, did not disclose known defects in the home, defendants willfully and negligently hid any and all facts in order to induce the plaintiff to purchase the house.

### Count 7 Breach of purchase and sale agreement

Plaintiff re alleges facts 1-28 herein. Plaintiff's initial phone calls with Norman Zolkos, and Ernie Ricci establish a purchase and sale agreement. During the phone conversation and personal conversations defendants made misrepresentations, misled and misinformed the plaintiff. After defendants Norman Zolkos Warwick Realty and Jacquelyn Zolkos Received deposit for home defendant entered the home and found statements made by defendants were inaccurate and outright misleading.

During conversation with Ernie Ricci we agreed on terms of sale through lease with option with the price and terms of the purchase which in return he breached when he failed to provide the correct documents and changed the agreement at his own volition.

### Count 8 Implied covenants of good faith and fair dealings

Plaintiff re asserts 1-28 of facts herein. Plaintiff asserts that plaintiff entered into a contract with defendants whose primary business is located in Warwick RI and Cranston RI,

[PLEADING TITLE] - 11

Plaintiff did all, or substantially all of the significant things that the contract required, that all conditions required for the performance had occurred, that the defendant unfairly interfered with the plaintiffs right to receive the benefits of the contract and that plaintiff was harmed by this conduct.

### Count 9 Promissory Estoppel

Plaintiff re asserts facts 1-28 herein. Defendants made certain material representations and omissions to the plaintiff in order to induce the plaintiff to enter into a purchase and sale agreement and caused the plaintiff to take reasonable actions to his detriment in reliance upon the defendant's material representations resulting in substantial damage to plaintiff.

### Count 10 Unfair Trade Practices Act

Plaintiff re asserts 1-28 of facts herein. The defendants knew at the time the plaintiff decided he was going to be purchasing the home that plaintiff was a general contractor for 20 plus years and was buying the home to improve the property and resell it for a profit. The plaintiff asserts the defendants engaged in unfair or deceptive acts with their failure to disclose all the facts and information to the plaintiff. Defendants are in the business of reselling properties and are aware the plaintiff was in the same business for the past 10 years. The plaintiff further alleges that as a result of the defendant's violation of UTPA that the defendants benefited financially, and that the plaintiff has suffered harm and damage.

### Count 11 Violation of Title X lead disclosure act

Defendants did willfully and knowingly violate the lead disclosure act by not informing the plaintiff that the home has or may contain lead based paint or other lead based material. It was

[PLEADING TITLE] - 12

known to the defendants that the home was built in the early 190's and was likely to contain lead based materials. Defendants are in the real estate business, buying and selling homes as brokers or agents. Defendants willfully and negligently placed the plaintiff and young children in danger as defendants were aware plaintiff would be remodeling the home. Plaintiff believes defendants being in the business for many years should have been aware of the danger and failed to inform the plaintiff of such dangers as required by law.

### Count 12 Violation of Protecting Tenants at Foreclosure Act of 2009'.

Defendants caused to be issued a 10 day notice to quit. Such notice to quit is in violation of "protecting Tenants at Foreclosures act of 2009"

### Count 13 Violation of

### RI TITLE 34 Mortgage Foreclosure and Sale

Defendants Sara Carpenter and Rebecca Carpenter violated RI title 34 and failed to mediate with homeowner. Plaintiff asserts he is and was the Homeowner as defined in Title 34 at the time of foreclosure and was required to attend mediation before any foreclosure or auction of the home in question. Plaintiff further asserts that he did not receive any contact for mediation as of this date.

### DAMAGES

Plaintiff has spent approximately $25,000 in the past 26 months on the home and $85,000 in labor making the home livable.

### Injury

[PLEADING TITLE] - 13

By reason of the defendants outrageous acts, the acts perpetrated by the defendants has caused emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aces, sleep loss, feelings of worthlessness and feelings of depression, anger, and irritability and loss of appetite. Accordingly plaintiff is entitled to special damages.

## FIRST CLAIM SEVERE EMOTIONAL DISTRESS

Plaintiff re alleges and incorporates 1-28 of the complaint herein

By reason of the defendants outrageous acts, and knowledge of plaintiffs injury that would cause harm, or susceptibility to emotional distress and physical injury and mental anguish including but not limited to bodily injury as stomach aces, sleep loss, feelings of worthlessness, and feelings of depression, anger, irritability and appetite loss. Accordingly plaintiff is entitled to special damages in the amount of $70,000

## SECOND CLAIM

## INTENTIONAL AND RECKLESS DISREGARD

Plaintiff re alleges and incorporates 1-28 of the complaint herein.

Defendants acted with the intent to inflict injury and with the realization that an injury was likely and substantially certain to result from their conduct. Knowledge of plaintiffs injury that would cause susceptibility to medical treatment, emotional distress and physical injury and mental anguish including but not limited to bodily injury such as stomach aces, sleep loss, feelings of worthlessness and feelings of anger, depression irritability and appetite loss. Accordingly plaintiff is entitled to punitive damages in the amount of $340,000.

[PLEADING TITLE] - 14

**PRAYER FOR RELEIF**

Plaintiff asks this court to grant the following relief

    1. Plaintiff request damages in the amount of $110,000

    2. Punitive damages in the amount of $340,000

    3. Compensatory damages in the amount of  $70,000

    4. Court Costs

    5. Void foreclosure and auction of 876 Ten rod rd

    6. Such other relief as the court deems just.

Dated This ___30th March 2014___

David Christian PRO SE

876 Ten Rod Rd

North Kingstown RI 02852

401-269-9983

**Certificate of Service**

I hereby certify that on this____30th____ day of __March__ 2014, a true copy of

the complaint with all attachments was mailed, postage prepared, priority mail with delivery

conformation to:

Sara Carpenter Rebecca Carpenter    Brenda L Ricci

C/O R.M. Zimmerman    180 Plain rd

[PLEADING TITLE] - 15

Exhibit A

provisions of the Housing Regulation of the State of Rhode Island.

36. Credit Report/Condominium/Cooperative Approval (if applicable) Tenant acknowledges and authorizes Agent to order and obtain a Consumer Report (credit report) from a Consumer Reporting Agency to be used in connection with the processing of this Lease. Tenant hereby also authorizes Agent to disclose to Landlord, or any other party involved in the Lease evaluation process, the credit information provided by the Consumer Reporting Agency.
Additional or special provision(s) in the attached addendum, bearing the signatures of all parties concerned are hereby made a part of this Lease. Addendum attached __ Yes   XX No

37. Reporting and Liability Resulting from Failure to Report Problems Tenant is responsible to report all mechanical, plumbing, structural, electrical or other problems to the Landlord promptly via email and phone. In the event that Tenant fails to report problems as required and as reasonably visible, Tenant will be responsible for the cost of repairs beyond what would have been had the problem been reported to Landlord promptly and without delay.
THIS AGREEMENT is the entire agreement between the parties, and no modification or addition to it shall be binding unless signed by the parties hereto. The covenants, conditions, and agreements contained herein are binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns, subject to restrictions hereon on assignment and subletting by Tenant. Wherever the context so requires, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all other genders. The paragraph headings appearing in this lease have been inserted for the purpose of convenience and reference only. They do no purport to, and shall not be deemed to, define, limit or extend the scope or intent of the paragraphs to which they appertain. Guarantor signatures are not required to bind the parties. THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS OF THE DOCUMENT, SEEK COMPETENT LEGAL ADVICE BEFORE SIGNING. WITNESS the following signatures on the day and year first appearing above.

*Exhibit D*

EXHIBIT "C"

ASSIGNMENT OF BID

February 1st, 2014

For good and valuable consideration, I, Ernest Ricci, hereby assign my bid and all of its right, title and interest in and to and under a Memorandum of Sale of Real Property by Auctioneer, dated January 30, 2014, in connection with premises situated at:

876 Ten Rod Road North Kingstown, RI 02852, which is the subject of a mortgage given by **WARWICK REALTY, LLC,**(mortgagor) to **SARA CARPENTER and REBECCA CARPENTER (mortgagee)** dated November 14, 2011 and recorded November 16, 2011, in the North Kingstown Land Records Book 2602 Page 157.

hereby assign to:
Brenda Ricci
180 Plain Road
North Kingstown, RI 02852
This Assignment is made without recourse, and subject to all terms and conditions contained in the said Memorandum of Sale, and Additional Terms, and Notices of Mortgagee's Sale of Real Estate.

RECEIVED FOR RECORD
TOWN OF NORTH KINGSTOWN, RI
Feb 28,2014 03:11P
JEANNETTE ALYWARD
TOWN CLERK

By:
Ernest Ricci

State of Rhode Island
Providence County, ss.

On this 25th day of February 2014, before me, the undersigned notary public, personally appeared Ernest Ricci, proved to me through satisfactory evidence of identification, which were RIDL 7713418 Exp 10/01/13 to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

(Affix Seal)
Notary Signature:

My commission expires: 05/06/17

*Exhibit E page 1*

## AFFIDAVIT OF SALE UNDER POWER
### OF SALE IN MORTGAGE

BK: 00000677
2811 PG: 209

We, **SARA CARPENTER and REBECCA CARPENTER** named in the foregoing deed, make oath and say that the principal and interest mentioned in the mortgage above referred to, was not paid or tendered or performed when due or prior to the sale, and that we mailed written notice of the time and place of sale to the mortgagor, as required by law, at the mortgagor's last known address and the address listed with the Tax Collector's office, by certified mail, return receipt requested, at least twenty (20) days prior to publishing said notice, and that we published on January 8, 15 & 22, 2014, in the Providence Journal, a public newspaper published in the City of Providence, Rhode Island, in accordance with the provisions of said mortgage, a notice of which the following is a true copy:

> **MORTGAGEE'S SALE**
> 876 TEN ROD RD.
> aka 876 TEN ROCK RD.
> NORTH KINGSTOWN,
> RI 02852
> AP 100 LOT 27
> The premises described in the mortgage will be sold subject to all prior encumbrances on January 30, 2014, at 10:00 AM on the premises, by virtue of the power of sale in the mortgage granted by WAR-WICK REALTY LLC, dated November 14, 2011, and recorded in the North Kingstown Land Records Book 2602 Page 157.
> $5,000.00 in cash, certified or bank check required to bid. Other terms to be announced at the sale.
> ALEXANDER J. RAHEB
> Attorney for the Mortgagee
> 650 Washington Hwy
> Lincoln, RI 02865
> 401-333-3377

I caused to be mailed by certified mail, return receipt requested, postage prepaid, notice of the time and place of said sale, addressed to all persons who had any recorded mortgage, attachment, lien, or any other encumbrance or interest relating to the real estate which was foreclosed, at the addresses listed in the recorded instruments which created said interests. A copy of the notice mailed to the mortgagor and all other parties with a recorded interest is attached and marked <u>EXHIBIT A</u>. The list of parties to which notices were mailed is attached and marked <u>EXHIBIT B</u>. All of said notices were mailed on December 17, 2013.

Pursuant to said notice, at the time and place therein appointed, we, **SARA CARPENTER and REBECCA CARPENTER** sold the mortgaged premises at public auction by Skip Ponte, an auctioneer, to **Ernie Ricci** for $21,000.00, bid by said **Ernie Ricci** being the highest bid made for said premises at said auction. Ernie Ricci's rights and obligations to purchase under said bid was then assigned to **Brenda L. Ricci**, 180 Plain Road, North Kingstown, RI 02852 (See attached assignment marked Exhibit C). We further make oath and say that an investigation has been made as to whether anyone, having an ownership interest in the property so sold which might be cut off by such foreclosure, was at the time of the sale or within twelve (12) months prior thereto, in the military service of the United States of America, as defined by in the Servicemembers Civil Relief Act, and that said investigation shows that no one having such ownership interest in said property was, at the time of the sale or within twelve (12) months prior thereto, in the military service as so defined. We further make affidavit and say that we am familiar with the contents of said Servicemembers Civil Relief Act.

**SARA CARPENTER**             **REBECCA CARPENTER**

STATE OF MASSACHUSETTS
COUNTY OF SUFFOLK

SUBSCRIBED AND SWORN to before me by said **SARA CARPENTER and REBECCA CARPENTER** on this 18th day of February 2014.

Notary Public
My commission expires: 6/5/14

ROBERT M. ZIMMERMAN
Notary Public
COMMONWEALTH OF MASSACHUSETTS

JOSEPH RAHEB
ATTORNEY AT LAW
650 WASHINGTON HIGHWAY
LINCOLN, RHODE ISLAND
02865-4253

F:\WP\PRC\CARPENTER PRC DEED 876 Ten Rod.wpd

*Exhibit B 2 pages*

INST: 00003424
BK: 2661 PG: 103

## QUITCLAIM DEED
### (LLC to Individual)

**KNOW ALL MEN BY THESE PRESENTS THAT:**

FOR VALUABLE CONSIDERATION OF ONE DOLLAR ($1.00), and other good and valuable consideration, cash in hand paid, the receipt and sufficiency of which is hereby acknowledged, **Warwick Realty, LLC**, a Limited Liability Company organized under the laws of the State of Rhode Island, hereinafter referred to as "Grantor", does hereby remise, release, and convey, with all quitclaim covenants, unto **DAVID CHRISTIAN**, a SINGLE MAN, hereinafter "Grantee", the following lands and property, together with all improvements located thereon, lying in the County of 876 TEN ROD ROAD NORTH KINGSTOWN, RI, State of Rhode Island, to-wit:

Describe Property of State "SEE DESCRIPTION ATTACHED"

Prior instrument reference: Book 2375, Page 196 of the Recorder of Washington County, Rhode Island.

LESS AND EXCEPT all oil, gas and minerals, on and under the above described property owned by Grantor, if any, which are reserved by Grantor.

SUBJECT to all easements, rights-of-way, protective covenants and mineral reservations of record, if any.

TO HAVE AND TO HOLD same unto Grantee, and unto Grantee's assigns forever, with all appurtenances thereunto belonging.

The Grantor does hereby covenant that he/she is a resident of the State of Rhode Island in compliance with R.I.G.L. Section 44-30-71.3.

The Grantor does hereby certify that Grantor has complied with the requirements of the smoke detector law, R.I.G.L. Section 23-28.35-1 et. seq., as evidenced by the copy of the smoke detector certificate attached hereto.

WITNESS Grantor(s) hand(s) this the 29 day of June, 2012.

_Jacquelyn Zolkos_ Sole member
Grantor
Jacquelyn ZOLKOS, Sole Member

STATE OF Rhode Island

COUNTY OF Providenc

In Providence, in said County on the 29 day of June, 2012, before me personally appeared Jacquelyn Zolkos, each and all to me known, and know by me to be the party(ies) executing the foregoing



## Receipt 1 (top left)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — WARWICK RI 02888

| | | |
|---|---|---|
| Postage | $ $2.03 | 0852 |
| Certified Fee | $3.30 | 02 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $8.03 | 03/31/2014 |

Sent To: Jacquelyn Zolkos
Street, Apt. No.; or PO Box No. 120 Lavan St.
City, State, ZIP+4 Warwick RI 02888

7013 3020 0000 5258 5256

PS Form 3800, August 2006 — See Reverse for Instructions

## Receipt 2 (top right)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — WARWICK RI 02888

| | | |
|---|---|---|
| Postage | $ $2.03 | 0852 |
| Certified Fee | $3.30 | 02 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $8.03 | 03/31/2014 |

Sent To: Norman Zolkos
Street, Apt. No.; or PO Box No. 120 Lavan St.
City, State, ZIP+4 Warwick RI 02888

7013 3020 0000 5258 4634

PS Form 3800, August 2006 — See Reverse for Instructions

## Receipt 3 (second row left)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — BOSTON MA 02116

| | | |
|---|---|---|
| Postage | $ $1.82 | 0852 |
| Certified Fee | $3.30 | |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $7.82 | 03/31/2014 |

Sent To: Carpenter c/o R.M. Zimmerman
Street, Apt. No.; or PO Box No. 111 Molborough St.
City, State, ZIP+4 Boston MA 02116-1947

7013 3020 0000 5258 4594

PS Form 3800, August 2006 — See Reverse for Instructions

## Receipt 4 (second row right)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — WARWICK RI 02888

| | | |
|---|---|---|
| Postage | $ $2.03 | 0852 |
| Certified Fee | $3.30 | 02 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $8.03 | 03/31/2014 |

Sent To: Warwick Realty LLC
Street, Apt. No.; or PO Box No. 120 Lavan St.
City, State, ZIP+4 Warwick RI 02888

7013 3020 0000 5258 4617

PS Form 3800, August 2006 — See Reverse for Instructions

## Receipt 5 (third row left)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — NORTH KINGSTOWN RI 02852

| | | |
|---|---|---|
| Postage | $ $2.03 | 0852 |
| Certified Fee | $3.30 | |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $8.03 | 03/31/2014 |

Sent To: Bidaco LLC c/o Ernie Ricci
Street, Apt. No.; or PO Box No. 180 Plain Rd.
City, State, ZIP+4 North Kingstown RI 02852

7013 3020 0000 5258 4655

PS Form 3800, August 2006 — See Reverse for Instructions

## Receipt 6 (third row right)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — NORTH KINGSTOWN RI 02852

| | | |
|---|---|---|
| Postage | $ $2.03 | 0852 |
| Certified Fee | $3.30 | |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $8.03 | 03/31/2014 |

Sent To: Tri-Star Properties c/o Ernie Ricci
Street, Apt. No.; or PO Box No. 180 Plain Rd.
City, State, ZIP+4 North Kingstown RI 02852

7013 3020 0000 5258 4662

PS Form 3800, August 2006 — See Reverse for Instructions

## Receipt 7 (bottom left)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — NORTH KINGSTOWN RI 02852

| | | |
|---|---|---|
| Postage | $ $2.03 | 0852 |
| Certified Fee | $3.30 | 02 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $8.03 | 03/31/2014 |

Sent To: Brenda Ricci
Street, Apt. No.; or PO Box No. 180 Plain Rd.
City, State, ZIP+4 North Kingstown RI 02852

7013 3020 0000 5258 4600

PS Form 3800, August 2006 — See Reverse for Instructions

## Receipt 8 (bottom right)

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE — NORTH KINGSTOWN RI 02852

| | | |
|---|---|---|
| Postage | $ $2.03 | 0852 |
| Certified Fee | $3.30 | 02 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $8.03 | 03/31/2014 |

Sent To: Ernie Ricci
Street, Apt. No.; or PO Box No. 180 Plain Rd.
City, State, ZIP+4 North Kingstown RI 02852

7013 3020 0000 5258 4624

PS Form 3800, August 2006 — See Reverse for Instructions